Ford & Harrison LLP
David L. Cheng (SBN 240926)
dcheng@fordharrison.com
Jason Shon (SBN 306198)
jshon@fordharrison.com
350 South Grand Avenue, Suite 2300
Los Angeles, California  90071
Telephone:  213-237-2400
Facsimile:   213-237-2401

Attorneys for Defendant
LINCARE, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO GARATE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINCARE, INC., a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  **'24 CV 0768 CAB MSB**<br><br>**DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1367(a), 1441(a), 1441(b), 1446 AND 1453**<br><br><br><br>Trial Date: None Set<br>Complaint Filed: March 27, 2024<br>Removal Filed: April 29, 2024 |

1

## TABLE OF CONTENTS

2

3                                                                                     **Page**

4

I.   PLEADINGS AND PROCESS, AND ORDERS.................................................... 1

II.  TIMELINESS OF REMOVAL ................................................................... 2

III. VENUE ................................................................................................. 2

IV.  JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT .. 2

     A.   Citizenship of Parties ................................................................. 3

     B.   The Amount in Controversy Exceeds $5 Million and Plaintiff's Classes are
          More than 100 Class Members ................................................... 4

V.   NOTICE OF REMOVAL .................................................................... 15

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>**Federal Cases**</u>

*Andrade v. Beacon Sales Acquisition, Inc.*,
   2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) ........................................................ 8

*Arias v. Residence Inn*,
   936 F.3d 920 (9th Cir. 2019) ................................................................................ 5

*Behrazfar v. Unisys Corp.*,
   687 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................................ 7

*Cagle v. C&S Wholesale Grocers, Inc.*,
   __ F.R.D. ___, 2014 WL 651923 (E.D. Cal. Feb. 19, 2014) .............................. 7

*Cortez v. United Natural Foods, Inc.*,
   2019 U.S. Dist. LEXIS 31540 (N.D. Cal. Feb. 27, 2019) .................................. 13

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) ................................................................................................ 5

*Fritsch v. Swift Transp. Co.*,
   899 F.3d 785 (9th Cir. 2018) ......................................................................... 13, 14

*Ibarra v. Manheim Investments, Inc.*,
   (9th Cir. 2015) 775 F.3d 1193 .............................................................................. 5

*Johnson v. Columbia Prop. Anchorage, LP*,
   437 F.3d 894 (9th Cir. 2006) ................................................................................ 4

*Kanter v. Warner-Labert Co.*,
   265 F.3d 853 (9th Cir. 2001) ................................................................................ 4

*Kantor v. Wellesley Galleries, Ltd.*,
   704 F.2d 1088 (9th Cir. 1983) .............................................................................. 3

*Kastler v. Oh My Green, Inc.*,
   2019 U.S. Dist. LEXIS 185484 (N.D. Cal. Oct. 25, 2019) ................................ 14

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002) .................................................................. 6

*Krug v. Wells Fargo Bank, N.A.*,
   2011 WL 6182341 (N.D. Cal. Dec. 13, 2011) ...................................................... 2

*Luckett v. Delta Airlines, Inc.*,
   171 F.3d 295 (5th Cir. 1999) ................................................................................ 6

*Mejia v. DHL Express (USA), Inc.*,
   2015 WL 2452755 (C.D. Cal. May 21, 2015) ...................................................... 7

*Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) .............................................................................................. 2

*Ramirez v. Benihana Nat'l Corp.*,
  2019 U.S. Dist. LEXIS 3537 (N.D. Cal. Jan. 8, 2019).........................14
*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938)................................................................................5

**Federal Statutes**

28 U.S.C. § 1332..........................................................................................1
28 U.S.C. § 1332(c)(1) ................................................................................4
28 U.S.C. §§ 1332(d) ..........................................................................1, 2, 5
28 U.S.C. § 1332(d)(2) ...........................................................................3, 4
28 U.S.C. § 1332(d)(2)(A)...........................................................................4
28 U.S.C. § 1332(d)(3)-(5)...........................................................................3
28 U.S.C. § 1332(d)(5)(B)..........................................................................14
28 U.S.C. § 1332(d)(6)................................................................................4
28 U.S.C. § 1367(a).....................................................................................1
28 U.S.C. § 1441(a)............................................................................1, 2, 4
28 U.S.C. § 1441(b).....................................................................................1
28 U.S.C. § 1446..........................................................................................1
28 U.S.C. § 1446(b).....................................................................................2
28 U.S.C. § 1446(d).....................................................................................2
28 U.S.C. § 1453..........................................................................................1
28 U.S.C. § 1453(b).....................................................................................3
28 U.S.C. § 84(b).........................................................................................2

**State Status**

California Labor Code § 226(e)(1) ............................................................12
California Labor Code §§ 218.5, 226, 1194 .............................................13
California Labor Code § 1194.2 ..................................................................8

**Federal Rules**

Fed. R. Civ. Proc. 6(a) ................................................................................2

**Other Authorities**

H.R. Rep. No. 112-10. .................................................................................5

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

Ford & Harrison LLP
ATTORNEYS AT LAW
LOS ANGELES

1   **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**
2   **THE SOUTHERN DISTRICT OF CALIFORNIA:**

3       **PLEASE TAKE NOTICE** that Defendant LINCARE, INC. ("Lincare")
4   hereby removes the above-entitled action from the Superior Court of the State of
5   California, County of San Diego, to the United States District Court for the Southern
6   District of California pursuant to 28 U.S.C. §§ 1332(d) (Diversity under Class Action
7   Fairness Act), 1367(a) (Supplemental Jurisdiction), 1441(a), 1441(b), 1446 and
8   1453, based on the following facts:

9   **I.     PLEADINGS AND PROCESS, AND ORDERS**

10      1.      On March 27, 2024, Plaintiff Ignacio Garate ("Plaintiff"), individually,
11  and on behalf of others similarly situated, filed a complaint against Defendant
12  Lincare Inc. (collectively, "Defendants"), entitled "*IGNACIO GARATE, an*
13  *individual, and DOES 1 through 50, inclusive,*" in the Superior Court of California,
14  County of San Diego, Case No. 37-2024-00014437-CU-OE-CTL (hereinafter, the
15  "Complaint").   A true and correct copy of the Complaint is attached to the
16  Declaration of Jason Shon, ¶ 2 ("Shon Decl.") as **Exhibit A**.  The allegations in the
17  Complaint are incorporated for reference in this notice of removal but are not
18  admitted.

19      2.      The Complaint alleges 8 causes of action which Plaintiff pursues on a
20  class-wide basis: (1) failure to pay all minimum wages; (2) failure to pay all overtime
21  wages; (3) meal period violations; (4) rest period violations; (5) failure to pay all sick
22  time; (6) wage statement violations; (7) waiting time penalties; and (8) unfair
23  competition. (*See generally* Ex. A. *supra*.)

24      3.      True and correct copies of the Summons, Civil Case Cover Sheet and
25  Alternate Dispute Resolution Package ("ADR") are attached to the Shon Decl. as
26  **Exhibit B**.

27
28

4.      Pursuant to 28 U.S.C. § 1446(d), the foregoing exhibits constitute all process, pleadings and orders received by Defendant or filed with the Court in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Superior Court of California, County of San Diego. (Shon Decl., ¶ 4.)

## II.      TIMELINESS OF REMOVAL

5.      This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b), in that it is filed within thirty (30) days after March 28, 2024, date on which Defendant was served with the Complaint. *See Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  The 30-day period for removal runs from the date of service of the summons and complaint, as governed by state law. *See id.*  Here, the last day for removal falls on April 29, 2024, accounting for weekends and holidays.  *See* 28 U.S.C. § 1446(b); Fed. R. Civ. Proc. 6(a); *Krug v. Wells Fargo Bank, N.A.*, No. C 11-5190, 2011 WL 6182341, *1 (N.D. Cal. Dec. 13, 2011). Accordingly, this Notice of Removal has been timely filed within the time provided by 28 U.S.C. § 1446(b).

## III.      VENUE

6.      The United States District Court for the Southern District of California is the proper venue for removal pursuant to 28 U.S.C. § 1441(a) because the action is pending in the Superior Court of the State of California for the County of San Diego, which is located within the Southern District of California. 28 U.S.C. § 84(b).

## IV.      JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

7.      This Court has original jurisdiction over this case pursuant to the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1332(d).  CAFA provides the federal district courts with original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

a state different from any defendant, and where the amount in controversy exceeds $5 million exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

8.     Here, removal is proper under CAFA because, as set forth below, the case is filed as a civil class action, the amount in controversy allegedly exceeds $5 million exclusive of interest and costs, and at least one member (if not all) of the class of plaintiffs is a citizen of a state different from Defendant.  The exceptions set forth in 28 U.S.C. § 1332(d)(3)-(5) are not applicable here.

9.     This action was initially brought on behalf of "[a]ll current and former non-exempt hourly employees who work or worked for Defendant in California during the four years immediately preceding the filing of the Complaint through the date of trial." (Compl., ¶ 38, Ex. A to Shon Decl., ¶ 2.)  The "membership of the Classes is unknown to Plaintiff at this time; however, it is estimated that the Classes consist of at least one hundred (100) individuals," and the "members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable." (*Id*., ¶ 39.)

**A.     Citizenship of Parties**

10.     Pursuant to 28 U.S.C. § 1453(b), "A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." CAFA's diversity requirement is satisfied when any member of a class of citizens is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2).

11.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to

- 3 -

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

which he or she intends to return. *Kanter v. Warner-Labert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

12.    Here, Plaintiff alleges that he " was and currently is a California resident residing in the State of California." (Compl., ¶ 7.)  Accordingly, Plaintiff is a citizen of the State of California for diversity purposes.  *Kanter*, 265 F.3d at 857.

13.    For purposes of CAFA, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1); *see also*, *Johnson v. Columbia Prop. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

14.    Defendant Lincare, Inc. is a corporation that is incorporated in and exists under the laws of the State of Delaware, with its principal place of business in the State of Florida.  Accordingly, Defendant Lincare, Inc. is a citizen of Florida and Delaware for purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

15.    The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

16.    Here, diversity of citizenship is met because Plaintiff is a citizen of California while Defendant is a citizen of Florida and Delaware. Therefore, the minimal diversity requirement is fully satisfied. *See*, 28 U.S.C. § 1332(d)(2)(A).

**B.    The Amount in Controversy Exceeds $5 Million and Plaintiff's Classes are More than 100 Class Members**

17.    CAFA requires the "matter in controversy" to exceed "the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount.  28 U.S.C. § 1332(d)(6).  Further, CAFA may

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

only be invoked if the proposed class contains at least 100 members.  28 U.S.C. § 1332(d).

18.     "In determining the amount in controversy, courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.* (9th Cir. 2015) 775 F.3d 1193, 1197 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).   "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibid.*

19.     Plaintiff has not alleged a specific amount in controversy in his Complaint.   A "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens¸* 574 U.S. 81, 89 (2014).   If the plaintiff or the court contests a defendant's allegations, however, "[e]vidence establishing the amount is required." (*Id.*)   As noted in *Dart Cherokee*: "'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.  Discovery may be taken with regard to that question.  In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" *Id.* (quoting House Judiciary Committee Report on the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. Rep. No. 112-10, p. 16 (2011).  *See also Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019) ("a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements") (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL

20.    Here, Lincare can plausibly allege, based on Plaintiff's Complaint and his prayer for relief, that the amount in controversy for Plaintiff's class-wide claims exceeds $5 million.  The assertions of Lincare herein are limited to their preliminary understanding of Plaintiff's claims and data currently available to Lincare.

21.    Plaintiff has defined the proposed Class as "[a]ll current and former non-exempt hourly employees who work or worked for Defendant in California during the four years immediately preceding the filing of the Complaint through the date of trial (the "Class")." (Compl., ¶ 38.)

22.    During the period of March 27, 2020 to April 29, 2024 (the date of removal) (hereinafter, the "Relevant Time Period"), based on the personnel records of those whom Lincare employed as hourly non-exempt employees during the Relevant Time Period, Lincare employed at least 841 individuals in California as hourly, non-exempt employees. The employees in question were employed full-time and worked eight hours a day for 5 days a week.  Accordingly, it is reasonable to assume that all 841 employees in question are members of the proposed Class Members.  Based on the proposed Class Members' personnel records, the average hourly rate of the Proposed Class Members is $23.53 per hour.  As of the date of the removal, the proposed Class Members worked approximately 62,541 workweeks in the Relevant Time Period.

23.    While Lincare denies Plaintiff's claims of wrongdoing and denies his request for relief thereon, the facial allegations in Plaintiff's Complaint and the total amount of wages, penalties and attorneys' fees at issue in this action, when viewed in the light most favorable to Plaintiff, is in excess of the jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp.

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

2d 993, 1001 (C.D. Cal. 2002). "When a '[d]efendant's calculations (are) relatively conservative, made in good faith, and based on evidence whenever possible,' the court may find that the '[d]efendant has established by a preponderance of the evidence that the amount in controversy is met.'" *Cagle v. C&S Wholesale Grocers, Inc.*, __ F.R.D. ___, 2014 WL 651923, *7 (E.D. Cal. Feb. 19, 2014) (quoting *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (citations omitted)). Nor does Lincare need to provide summary judgment-type evidence. *Cagle*, 2014 WL 651923, *7.

24.   Where a plaintiff alleges that a defendant "adopted and maintained uniform policies, practices and procedures that caused the purported violations of California's [break laws] … [i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCx, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (emphasis added). In that instance, the district court found that "a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the complaint." *Id.*

25.   Here, Plaintiff alleges 8 causes of action: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) meal period violations; (4) rest period violations; (5) failure to pay all sick time; (6) wage statement violations; (7) waiting time penalties; and (8) unfair competition. (*See generally* Ex. A. *supra*.)

26.   Plaintiff seeks unpaid wages, unpaid premium compensation, interest, penalties, as well as attorneys' fees and costs. Plaintiff seeks recovery of the aforementioned remedies for all members of the Proposed Class. (*See*, *e.g.*, *id.* at Prayer for Relief, ¶¶ 1-14.)

**Failure to Pay Minimum Wage**

27.   Plaintiff alleges that he and other "non-exempt employees regularly worked various shifts, many of which were more than 8.0 hours in a workday and 40.0 hours in a workweek . . . [and] that other non-exempt employees were also subjected to the same policies, procedures, practices, working conditions, and corresponding wage and hour violations to which he was subjected during his employment." (Compl., ¶ 17.)

28.   As for the First Cause of Action, Plaintiff alleges that "Defendant has consistently failed to accurately record all time worked, including the time non-exempt employees were under the employer's control. This included a policy and practice of time editing and failing to accurately record and capture non-exempt employees' time correctly, including all time spent working off-the-clock, pre-shift and post-shift and often during meal periods. As a result of these company-wide policies/practices, Plaintiff and other non-exempt employees are not compensated for all the hours that they actually work and all of the overtime hours they actually work, in violation of Labor Code [] and applicable Wage Orders." (Compl., ¶ 18.) "These allegations of unpaid wages due to "policies, practices, and procedures" warrant an assumption of at least 30 minutes of unpaid wages per week. *See Andrade v. Beacon Sales Acquisition, Inc*., Case No. CV 19-6963-CJC(RAOx), 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) ("violation rate of one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegation of 'policy and/or practice'").

29.   Based on the applicable minimum wage and the accompanying liquidated damages, if the proposed Class worked off the clock only 30 minutes per week, the amount in controversy for this claim is **$1,471,589.73** (62,541 workweeks x $23.53 per hour x 30 minutes x 2 for liquidated damages[1]).

---

[1] Pursuant to California Labor Code section 1194.2.

DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

1   **Failure to Pay Overtime Wage**

2       30.     As for his Second Cause of Action, Plaintiff alleges that "Plaintiff and

3   other non-exempt employees worked regular shifts that lasted longer than 8.0 hours

4   in a workday and resulted in non-exempt employees regularly working more than 40

5   hours in a workweek. However, Defendant failed to properly calculate and pay

6   overtime wages at the proper legal rate due to Defendant's uniform failure to include

7   all forms of compensation/renumeration, including, but not limited to, commissions,

8   incentives, non-discretionary bonuses, shift pay, and all other forms of renumeration

9   in calculating the 'regular rate of pay' for purposes of overtime compensation."

10  (Compl., ¶ 22.) As with the minimum wage claim, Plaintiff alleges that Defendant

11  had a "policy" of requiring employees to work overtime. (Compl, ¶ 24.) Based on the

12  applicable regular rate of pay, if the proposed Class worked only 1 hour of overtime

13  per week, an extremely conservative estimate given Plaintiff's allegations of

14  unlawful policies and practices, the amount in controversy for the overtime claim is

15  **$2,207,304.63** (62,541 workweeks x $35.29 overtime rate x 1 hour of overtime per

16  week).

17  **Failure to Provide Meal Periods Claim**

18      31.     As for his Third Cause of Action, Plaintiff alleges that "[d]ue to

19  Defendant's uniform meal period policies/practices, operational requirements, and

20  work demands, Plaintiff and other non-exempt employees often could not take timely

21  and uninterrupted net 30-minute first meal periods before the end of the fifth hour of

22  work." (Compl., ¶ 28.)

23

24      32.     Plaintiff further alleges that non-exempt employees "worked more than

25  10.0 hours in a shift [and] they were not allowed and permitted to take a mandated

26  second meal period before the end of the tenth hour of work in violation of the Labor

27  Code and applicable Wage Orders." Plaintiff further alleges that "meal periods were

28

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

often interrupted and/or lasted fewer than 30 minutes due to Defendant's meal period policies/procedures, operational requirements, and work demands." (*Id.*) Finally, Plaintiff alleges that Defendant "failed and continues to fail to maintain a mechanism by which non-exempt employees were paid meal period premiums at the 'regular rate of pay.'" (Compl., ¶ 29.)

33.    Based on his allegations, Plaintiff alleges that the proposed Class were prevented from taking any lawful meal breaks for each shift they worked because of Lincare's illegal policies and practices. This type of allegation permits a reasonable assumption of a 100 percent violation rate, or 5 hours of pay per week for 5 days of missed meal breaks.  However, using a conservative assumption that the proposed Class were not provided with one meal breaks per workweek (one out of five meal periods were missed, short, or late per week), then based on the proposed Class' average rate of pay ($23.53/hour) and their respective number of workweeks (62,541 workweeks), the meal break violation claim alleges at least **$1,471,589.73** ($23.53/hour x 1 hour x 62,541 workweeks) in damages.[2]

**Failure to Provide Rest Periods Claim**

34.    As for his Fourth Cause of Action, Plaintiff alleges that he and "other non-exempt employees were not provided with all 10-minute rest periods for every four hours worked, or a major fraction thereof, due to Defendant's uniform rest period policies/practices, operational requirements, and work demands." (Compl, ¶ 31.) Plaintiff further alleges they were denied a "second rest period for shifts in excess of six hours and a third rest period for shifts in excess of 10.0 hours in a workday." (*Id.*) Plaintiff further alleges that each time "non-exempt employees were unable to take a compliant rest period, Defendant failed and continues to fail to adequately pay rest period premium payments at the 'regular rate of pay' as required

---

[2]  The meal break calculation is also reasonable as it is only accounting for the alleged violation of the first meal break, not the second meal break.

DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

by Labor Code § 226.7." (*Id*.).    Plaintiff further alleges that Defendant failed to provide legally compliant rest periods "[b]y not relieving all non-exempt employees of all duties during rest periods …."  (Compl, ¶ 32.)

35.    Based on his allegations, Plaintiff is claiming that the proposed Class was prevented from taking any lawful rest breaks for each shift they worked because of Lincare's illegal policies and practices. This type of allegation permits a reasonable assumption of a 100 percent violation rate. However, using a conservative assumption that the proposed Class was not provided with one rest break per workweek **(merely a 10 percent violation rate (one rest period taken out of 10 rest periods owed per week))**, based on the proposed Class members' average rate of pay ($23.53/hour) and their respective number of workweeks (62,541 workweeks), the rest break violation claim alleges at least **$1,471,589.73** ($23.53/hour x 1 hour x 62,541 workweeks) in damages.

**Failure to Furnish Accurate Itemized Wage Statements Claim**

36.    For the Sixth Cause of Action, Plaintiff alleges that as a result of "Defendant's failure to Pay Plaintiff and the Wage Statement Subclass for all minimum, overtime, sick pay wages and missed meal and rest period premiums at the appropriate legal rate, Defendant failed to include required information on Plaintiff's and the Wage Statement Subclass' wage statements, including, but not limited to, the gross wages earned, the net wages earned in violation of Labor Code section 226(a)" and that the failure was "knowing and intentional." (Compl., ¶¶ 76-77.)

37.    "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a

DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Labor Code ¶ 226(e)(1).

38.     The proposed Class received one wage statement every two weeks. Given the one-year statute of limitations for this claim, if each proposed Class Member that worked after March 27, 2023 (approximately 349 employees, according to personnel records), is awarded $50 for the first pay period he or she worked, and $100 for every pay period thereafter, then the amount in controversy for this claim is approximately **$874,050** ($2,550 [$50 for initial violation +$100 x 25 for second violation] x 349 employees).

**Failure to Timely Pay All Wages Due to Discharged and Quitting Employees**

39.     As for the Sixth Cause of Action, Plaintiff claims that "Defendant willfully failed to pay the Waiting Time Subclass for all hours worked, including all minimum and overtime, sick pay wages, and their meal and rest period premiums at the 'regular rate of pay,' before or upon termination or separation from employment with Defendant as required by Labor Code §§ 201 and 202." (Compl., ¶ 83.) Plaintiff further alleges that "[a]s a result, Defendant is liable to the Waiting Time Subclass for waiting time penalties amounting to thirty (30) days wages for Plaintiff and the Waiting Time Subclass pursuant to Labor Code § 203." (*Id.,* at ¶ 84.)

40.     Given the three-year statute of limitations for claims section 203, at least 454 class members were terminated after March 27, 2021. The average daily shift for these employees was eight hours in length. Assuming *arguendo* the truth of Plaintiff's allegations that these employees are entitled to waiting time penalties, the amount in controversy is estimated to be at least **$2,563,735.92** (454 terminations x $23.53/hour x 8 hours x 30 days).

41.     The amount in controversy for *only* Plaintiff's first (minimum wage violation claim), second (overtime violation claim), third (meal period claim), fourth (rest period claim); sixth (wage statement claim), and seventh (waiting time

DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL

penalties) causes of action is estimated to be at least **$10,059,859.74**, exclusive of attorneys' fees and interest.

42.    Plaintiff also seeks an award of reasonable attorneys' fees and costs for the Proposed Class Members pursuant to California Labor Code §§ 218.5, 226, 1194, and Code of Civil Procedure § 1021.5. (*See* Compl., Prayer for Relief, ¶ 13.) "[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co.*, 899 F.3d 785, 794 (9th Cir. 2018). "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are 'at stake' in the litigation,' and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Id.*

43.    Although *Fritsch* has rejected an automatic assumption that a 25 percent fee recovery will be awarded in a wage and hour class action, the *Fritsch* court still permits use of a "percentage based method" "when estimating the amount of attorneys' fees included in the amount in controversy." *Id.*, at 796, n.6. District courts have recognized this important caveat in *Fritsch*. *See Cortez v. United Natural Foods, Inc.*, 2019 U.S. Dist. LEXIS 31540, *22-23 (N.D. Cal. Feb. 27, 2019) ("while the Ninth Circuit refused to hold that a court must always use the 25% rate of the final award to determine future attorneys' fees, the Court did 'not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy.'").

44.    The rule now is merely that a removing defendant cannot assume that such a percentage will be awarded. As a result, several district courts, after *Fritsch*, have held that where nothing about a wage and hour class action suggests that there would be a downward departure from the 25 percent benchmark, such a percentage is appropriate. *See Cortez*, 2019 U.S. Dist. LEXIS 31540, *23 (N.D. Cal. Feb. 27,

- 13 -

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

2019) (relying on *Fritsch*, holding that "[i]n the Court's experience, this appears to be a typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate."); *Kastler v. Oh My Green, Inc.*, 2019 U.S. Dist. LEXIS 185484, *18 (N.D. Cal. Oct. 25, 2019) (following *Fritsch*, and holding that "[a]lthough Defendant provide[d] very little to support a 25% fee calculation," the court, relying "on its own knowledge of customary rates and [its] experience concerning reasonable and proper fees," found that it was reasonable); *Ramirez v. Benihana Nat'l Corp.*, 2019 U.S. Dist. LEXIS 3537, *6 (N.D. Cal. Jan. 8, 2019) ("While the Court acknowledges the 25% benchmark does not automatically apply in all cases, see *Fritsch*, 899 F.3d at 796…none of the factors counseling against the application of the 25% benchmark have been raised by plaintiffs, nor does the record before the Court otherwise reflect a departure from such benchmark is warranted.").

45.    Therefore, because nothing about this wage and hour class action suggests that a downward departure is warranted, this Court should consider attorneys' fees to be 25 percent of the fund. Considering the sum of the potential damages for only the first, second, third, fourth, sixth, and seventh causes of action are estimated to be at least $10,059,859.74, it is reasonable to assume *arguendo* that the potential attorneys' fees would be $2,514,964.94 ($10,059,859.74 x 25%) for these six causes of action. This calculation would put a total of **$12,574,824.68** in controversy.

46.    Accordingly, the amount of attorneys' fees at stake in this case add even more to the amount in controversy, even without which the claims readily exceed the $5,000,000 threshold under CAFA.

47.    Finally, CAFA's numerosity requirement of the proposed class having at least 100 class members is satisfied by the 841 Proposed Class Members identified herein above.  *See* 28 U.S.C. § 1332(d)(5)(B).

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

1      **V.     NOTICE OF REMOVAL**

2      48.     A copy of this notice of removal will be filed with the Clerk of the

3 Superior Court of the State of California, County of San Diego. (Ex. C, Shon Decl. ¶

4 5.)

5      49.     By removing the action to this Court, Defendant does not waive any

6 defenses, objections, or motions available to them under state or federal law.

7 Defendants expressly reserve the right to require that the claims of Plaintiff and/or

8 all members of the putative class be decided on an individual basis.

9      50.     WHEREFORE, Defendant prays that the Court remove this civil action

10 from the Superior Court of the State of California, County of San Diego, to the United

11 States District Court for the Southern District of California.

12

13 Dated:     April 29, 2024     Respectfully submitted,

14      FORD & HARRISON LLP

15

16      By: */s/ Jason Shon*

17      David L. Cheng
     Jason Shon

18      Attorneys for Defendant

19      LINCARE, INC.

20

21

22

23

24

25

26

27

28

- 15 -

DEFENDANT LINCARE, INC.'S NOTICE
OF REMOVAL

# **PROOF OF SERVICE**

I, Donna Sanchez, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 350 South Grand Avenue, Suite 2300, Los Angeles, California 90071.

On **April 29, 2024**, I served a copy of the following document(s) described below on the interested parties in this action, as follows:

## **DEFENDANT LINCARE, INC.'S NOTICE OF REMOVAL**

Mehrdad Bokhour, Esq.                                 Attorneys for Plaintiff,
BOKHOUR LAW GROUP, PC                         IGNACIO GARATE and
1901 Avenue of the Stars, Suite 450              the Putative Classes
Los Angeles, CA 90067
Tel.: (310) 975-1493
Fax: (310) 675-0861
Email: mehrdad@bokhourlaw.com

Joshua S. Falakassa, Esq.
FALAKASSA LAW, P.C.
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Tel.: (818) 456-6168
Fax: (888) 505-0868
Email: josh@falakassalaw.com

☒ **BY U.S. MAIL:** By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth above. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **ELECTRONICALLY:** I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.

☒ **FEDERAL:** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America and State of California that the above is true and correct.

Executed on **April 29, 2024**, at Los Angeles, California.

_____
Donna Sanchez

- 17 -                     PROOF OF SERVICE

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES