**BOKHOUR LAW GROUP, P.C.**
Mehrdad Bokhour, Esq., CA Bar No. 285256
*mehrdad@bokhourlaw.com*
Zachary Cavanagh, Esq., CA Bar No. 339401
*zach@bokhourlaw.com*
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Tel: (310) 975-1493; Fax: (310) 675-0861

**FALAKASSA LAW, P.C.**
Joshua S. Falakassa, CA Bar No. 295045
*josh@falakassalaw.com*
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Tel: (818) 456-6168; Fax: (888) 505-0868

Attorneys for Plaintiff and the Putative Classes

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO GARATE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINCARE, INC., a Delaware Corporation; and DOES 1-50, inclusive.<br><br>Defendants. | CASE NO.:  *3:24-cv-00768-CAB-MSB*<br><br>**PLAINTIFF IGNACIO GARATE'S OPPOSITION TO DEFENDANT LINCARE, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS**<br><br>Date: June 28, 2024<br>Time: PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br>Courtroom: 15A<br><br>Removal Date: April 29, 2024<br>Trial Date: None Set |

-i-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

# **TABLE OF CONTENTS**

I.    INTRODUCTION & SUMMARY OF ARGUMENT ................................................ 1

II.    STATEMENT OF FACTS ................................................................................... 1

III.    LEGAL ARGUMENT ..................................................................................... 3

a.    Plaintiff is Exempt from Application of the FAA as a "Transportation Worker" ...... 3

b.    The Arbitration Agreement is Procedurally and Substantively Unconscionable ........ 6

   i.    The Arbitration Agreement is Procedurally Unconscionable as it is Oppressive and Riddled with Surprise .......................................................................... 6

   ii.    The Arbitration Agreement is Substantively Unconscionable ............................. 9

The Arbitration Agreement is Not Mutual as it Allows Defendant to Obtain Injunctive Relief Without Notice and to Recover its Attorneys' Fees and Costs. ........................... 9

    1.    Defendant's Confidentiality Provisions Unfairly Prejudice Plaintiff's Abilities to Investigate His Claims or Conduct Adequate Discovery ..................................... 11

    2.    The Arbitration Agreement Fails to Guarantee Plaintiff's Statutory Right to Attorneys' Fees as a Prevailing Party. ......................................................... 13

    3.    The Arbitration Agreement Grants Defendant a "Free Peak" at Plaintiff's Claims ............................................................................................... 14

    4.    The Arbitration Agreement's Wholesale PAGA Waiver is Substantively Unconscionable .................................................................................... 15

    5.    The Arbitration Agreement Fails to Carve-Out Plaintiff's Right to Seek Enforcement of Labor Code Claims by Way of a Berman Hearing ......................... 16

c.    The Arbitration Agreement's Unconscionability Cannot be Cured .......................... 18

IV.    CONCLUSION ............................................................................................ 20

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

## CASES

*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638 ............................. 7, 19
*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771 ........................................ 13
*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 48 ..................................... 8,10
*Armendariz v. Found. Health Psychcare Servs., Inc.* (2000) 24 Cal. 4th 83 ............ passim
*Baxter v. Genworth N. Am. Corp.* (2017) 16 Cal. App. 5th 713 ............................ 11, 15
*Bissonnette, et al. v. LePage Bakeries Park St., LLC, et al.,* 601 U.S. ----144 S.Ct. 905 (2024) ................................................................................................................ 3, 4
*Cadigan v. American Trust Co.* (1955) 131 Cal.App.2d 780 ....................................... 10
*Carbajal v. CWPSC, Inc.* (2016) 245 Cal. App. 4th 227 .............................................. 14
*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619 .................. 18, 19
*Carmona Mendoza v. Domino's Pizza, LLC,* 73 F.4th 1135 (2023) ............................... 4
*Circuit City Stores Inc. v. Ahmed* (9th Cir. 2002) 283 F.3d 1198 .............................. 3,9
*De Leon v. Pinnacle Prop. Mgmt. Servs.*, LLC (2021) 72 Cal. App. 5th 476 .............. 11
*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 ........................................................... 9, 19
*Harden v. Roadway Package Sys., Inc.* (9th Cir. 2001) 249 F.3d 1137 ......................... 3
*Hasty v. American Automobile Assn. etc.* (2023) 98 Cal.App.5th 1041 .................. 11, 12
*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238 ............................................. 7
*Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348 .................................................. 15
*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322 ................. 6, 10
*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 ................................................... 7
*Malone v. Superior Court (California Bank & Trust)* (2014) 226 Cal.App.4th 1551 ........ 6
*Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035 ................................... 15
*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267 ......................... 9, 14
*Ortiz v. Randstad Inhouse Services, LLC* (9th Cir. 2024) 95 F.4th 1152 ....................... 5
*OTO, L.L.C. v. Ken Kho* ............................................................................................ 18
*Ramos v. Superior Ct.* (2018) 28 Cal. App. 5th 1042 ................................................ 11
*Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) ....................................... 4
*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 ..................................... 6
*Saxon v. Southwest Airlines Co.*, 596 U.S. 450, 455-59 (2022) ..................................... 4
*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 ........................................ 6
*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109 ............................................... 15
*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553 ............................... 16
*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022) ................................... 15
*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242 ................................................ 14

## STATUTES

9 U.S.C. § 1 .............................................................................................................. 3
Bus. & Prof. Code § 17200 ....................................................................................... 16
Civil Code § 1608 ..................................................................................................... 16
Civil Code section § 1642 ....................................................................................... 8,10
Code Civ. Proc., § 1670.5 ........................................................................................... 6
Code of Civil Procedure § 1021.5 .............................................................................. 13
Code of Civil Procedure § 1281.2 ................................................................................ 6
Labor Code § 218.5 ................................................................................................... 13
Labor Code § 226(a) ................................................................................................. 13
Labor Code § 218.5 ................................................................................................... 13
Labor Code § 1194 ................................................................................................... 13
Labor Code §1198.5 and 226 ....................................................................................... 2
Labor Code § 226 ........................................................................................................ 2
Labor Code § 206.5(a) ............................................................................................... 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION & SUMMARY OF ARGUMENT

Defendant Lincare, Inc. ("Defendant") comes before this Court seeking to strip Plaintiff Ignacio Garate ("Plaintiff") of his right to a jury trial based on an arbitration agreement that does not apply to Plaintiff, who is exempt from the FAA pursuant to the "transportation worker" exemption. Indeed, Plaintiff's job duties require that he play a "direct and necessary" role in the interstate commerce of medical equipment/supply in that he ensured that such medical equipment/supply would reach its final destination in the supply chain by delivering to clients.  On this basis alone, Defendant's Motion must be denied.

Moreover, Defendant's arbitration agreement is both procedurally and substantively unconscionable as it is a contract of adhesion, entered into without any opportunity to negotiate. The arbitration agreement is substantively unconscionable because it (1) provides Defendant a "free peak" into Plaintiff's claims before arbitration, (2) fails to guarantee Plaintiff his right to recover attorneys' fees as a prevailing party,  (3) contains an impermissible "wholesale" PAGA waiver, (4) denies Plaintiff's right to Berman Hearings, and (5) contains an overbroad confidentiality provision that severely limits Plaintiff's ability to investigate and conduct discovery to prove his claims. Making matters worse, Defendant's arbitration agreement and other contemporaneous agreements contain provisions that unilaterally permit Defendant to bring claims against Plaintiff in court, to obtain injunctive relief without notice to Plaintiff, and to recover its attorneys' fees and costs. Such unilateral and unconscionable provisions make the arbitration process pervasively unfair and provides unjustified benefits to Defendant and renders the agreement unconscionable.

As further detailed below, the Court should not enforce this agreement, and shall deny Defendant's Motion to Compel Arbitration in its entirety.

## II.   STATEMENT OF FACTS

On or about March 25, 2024, counsel for Plaintiff sent Defendant a letter requesting

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**

a copy of Plaintiff's employee personnel file and payroll records pursuant to Labor Code 1198.5 and 226. (Declaration of Mehrdad Bokhour in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration ["Bokhour Decl."], ¶ 3.)

On or about May 20, 2024, Defendant, by and through its counsel, produced Plaintiff's employee personnel file and payroll records, which included a copy of the arbitration agreement and other onboarding documents that contain confidentiality provisions. (Bokhour Decl., ¶¶ 4-5, and at **Exhibit A**, a true and correct copy of the Lincare and Affiliates Memorandum of Employee's Agreement.)

On March 27, 2024, Plaintiff filed his Class Action Complaint alleging: (1-2) failure to pay minimum and overtime wages; (3-4) meal and rest period violations; (5) failure to pay all sick time; (6) wage statement violations; (7) waiting time penalties; and (8) unfair competition.

In response, Defendant herein attempts to strip Plaintiff of his constitutional right to a jury trial and ability to purse a class action through an unfair arbitration agreement that he had no opportunity to negotiate and was presented on a "take it or leave it" basis. (Garate Decl., ¶ 5.) Although Plaintiff does not contest that he signed the arbitration agreement on December 27, 2023—because he was required to sign the same as a part of his onboarding procedure—however, the arbitration agreement is not the exclusive agreement governing the parties' rights and legal remedies. (Garate Decl., generally.) Plaintiff was also *required* to sign other contemporaneous documents during the onboarding process, including "Lincare and Affiliates Memorandum of Employee's Agreement," which imposes on Plaintiff certain duties regarding confidentiality. (Garate Decl., ¶¶ 5 and 10; Bokhour Decl., **Exhibit A**.) Notably, these confidentiality provisions require Plaintiff to not disclose, and to protect, certain confidential information. (Bokhour Decl., **Exhibit A**.) Further, the agreements also unilaterally allow Defendant to, "in addition to any other rights or remedies it may have hereunder, at law or in equity, be entitled to (i) apply for and obtain an injunction without notice to enforce the provisions hereof against me and/or any person or entity acting on my behalf in violation hereof; and

(ii) recover its reasonable attorneys' fees and costs." (*Id.* at Section 8.)

Nevertheless, Plaintiff, in his limited education, did not knowingly understand and appreciate the meaning and implications of the arbitration agreement and contemporaneous confidentiality provisions, and was left with no additional understanding beyond that he was specifically instructed by Defendant that his signature to all onboarding documents was required as a condition of his employment. (Garate Decl., generally.)

## III.  LEGAL ARGUMENT

### a.  Plaintiff is Exempt from Application of the FAA as a "Transportation Worker"

Plaintiff is exempt from arbitration under the "transportation worker exemption" of Section 1 of the FAA, which provides a limited exemption from FAA coverage to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. To qualify for the Section 1 exemption, an individual must work for a business pursuant to (1) a "contract of employment," (2) be a "transportation worker," and (3) be "engaged in interstate commerce." See *Harden v. Roadway Package Sys., Inc.* (9th Cir. 2001) 249 F.3d 1137, 1140 (citing *Circuit City supra*, 532 U.S. at 118 (2001).

In May 2024, the United States Supreme Court decided that a "transportation worker" is not required to work for a company in the transportation industry to be exempt under §1 of the FAA. In *Bissonnette, et al. v. LePage Bakeries Park St., LLC, et al.,* 601 U.S. ----144 S.Ct. 905 (2024), defendants were responsible for producing/distributing baked goods like breads, buns, rolls, and snack cakes. Plaintiffs each entered into Distributor Agreements with defendants, respectively. According to these agreements, Plaintiffs pick up baked goods from local warehouses and distribute them to stores and restaurants, earning the difference between the acquisition and selling prices. They are also responsible for sales promotion, stock management, and other operational tasks.

In response to defendant's motion to compel arbitration, Plaintiffs claimed that they are not subject to the FAA because they are "transportation workers" within the meaning

of Section 1 of the FAA, which excludes contracts with "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." The Court of Appeals for the Second Circuit affirmed the district court's decision ordering arbitration and dismissing Plaintiff's wage and hour lawsuit against Defendant concluding that Plaintiffs did not qualify as "transportation workers" because they were not employed by a company in the transportation industry.

In reversing the ruling, the United States Supreme Court reasoned that imposing a "transportation industry" requirement would lead to complex line-drawing problems about what counts as that industry. Moreover, the statutory text and precedent did not support limiting "seamen" and "railroad employees" to particular industries. As such, the Supreme Court ruled that the lower court erred in compelling arbitration solely because the workers were in the bakery industry. (See *Bissonnette, et al., v. LePage Bakeries Park St., LLC, et al*., 601 U.S. ----144 S.Ct. 905 (2024))

Moreover, in *Rittmann v. Amazon.com, Inc*., 971 F.3d 904 (9th Cir. 2020), the court considered whether "last mile" Amazon delivery drivers—who delivered packages from a warehouse to end-use consumers on a predominantly intrastate basis—qualified for the exemption. (*Id*. at 907.) In concluding that the drivers were exempt, the Ninth Circuit reasoned that workers may be "engaged in the movement of goods in interstate commerce, even if they do not cross state lines," (*Id*. at 915), because they "complete the delivery of goods that Amazon ships across state lines. . ." (*Id*. at 917; see also *Carmona Mendoza v. Domino's Pizza, LLC,* 73 F.4th 1135 (2023), petition for cert. filed (U.S. Oct. 23, 2023) [following *Rittmann*, the court reaffirmed its prior conclusion that delivery drivers who make last-mile deliveries of pizza ingredients from Domino's supply centers to its franchisees' retail stores were also exempt transportation workers.]; see *Saxon v. Southwest Airlines Co*., 596 U.S. 450, 455-59 (2022) [ airport ramp agents played a "direct and necessary" role in the interstate commerce of goods in that they ensured that baggage would reach its final destination by taking it on and off planes. This class of employees was also "actively engaged" and "intimately involved with" transportation.]; see also *Ortiz*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION

*v. Randstad Inhouse Services, LLC* (9th Cir. 2024) 95 F.4th 1152, the Ninth Circuit Court of Appeals decided that warehouse workers and others who play a "direct and necessary role" in the transportation of goods and people may fall within the "transportation worker exemption" to the FAA.].)

In the present case, Plaintiff worked as a "Delivery Driver and Service Representative" for Defendant's medical equipment and supply business out of San Diego, California. (Garate Decl., ¶ 3; Bokhour Decl., **Exhibits B & C**.) As a Delivery Driver, Plaintiff's job responsibilities included, but were not limited to the following, which are listed in his job description: Deliver medical equipment, oxygen, and supplies to customers in a safe, courteous, and timely manner; Instruct patients on the safe and appropriate use of medical equipment; Follow patient orientation checklists during delivery and training of new patients; Conduct daily deliveries; Equipment set up; Inspect delivery vehicle and ensure the safety of the loading and unloading process; Maintain cleanliness and organization of delivery vehicle and warehouse, adhering to all FDA protocols. (Garate Decl., ¶ 3; Bokhour Decl., Exhibit D, a true and correct copy of Defendant's "Delivery Driver" job posting, found at: https://g.co/kgs/Dt9qMLi.)

Plaintiff was responsible for transporting Defendant's medical equipment and supplies, which crossed state lines, to the end user/clients. Indeed, "Lincare provides variety of home health care services that can be <u>delivered … throughout the United States</u>." (Declaration of Paula K. Adams in Support of Defendant's Motion to Compel Arbitration ["Adams Decl."], ¶ 2, emphasis added.) As a Delivery Driver, Plaintiff moved the goods for the direct purpose of completing their travel through an interstate supply chain to the end user-a small yet necessary part of interstate commerce. Nevertheless, just as in *Ritterman, Carmonda*, *Mendez*, *and Saxon*, Plaintiff's job duties require that he play a "direct and necessary" role in the interstate commerce of medical equipment/supply in that he ensured that medical equipment would reach its final destination by delivering to clients. Even if Plaintiff's job duties only involved moving related products within California, per *Ortiz*, these job duties are sufficiently connected to the transportation of

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**

goods through interstate commerce to trigger the transportation worker exemption.

Based on the foregoing, Plaintiff is exempt from arbitration as a "transportation worker" under the FAA, and for this reason alone, Defendant's Motion shall be denied in its entirety.

### b.     The Arbitration Agreement is Procedurally and Substantively Unconscionable

In California, courts may refuse to enforce an arbitration agreement if it is unconscionable. (Code Civ. Proc., § 1670.5.) The rules of unconscionability apply to all contracts and have application under Code of Civil Procedure section 1281.2. (*See Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142.) Procedural unconscionability concerns the manner in which the contract was negotiated.  It may result from either oppression or surprise due to unequal bargaining power. (*Malone v. Superior Court (California Bank & Trust)* (2014) 226 Cal.App.4th 1551, 1561.) "Substantive unconscionability" refers to terms that unreasonably favor one party.  (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145.) Though California courts have used different formulations for its standard ["overly harsh," "unduly oppressive," so one-sided as to "shock the conscience," etc.)], all are essentially the same: they are concerned not with a "simple old-fashioned bad bargain" but with terms that are "unreasonably favorable to the most powerful party." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911.) Both elements must be present before a contract provision will be rendered unenforceable on grounds of unconscionability. (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329.) However, procedural and substantive unconscionability are evaluated on a sliding scale. (*Armendariz v. Found. Health Psychcare Servs., Inc*. (2000) 24 Cal. 4th 83, 114.)

### i.     The Arbitration Agreement is Procedurally Unconscionable as it is Oppressive and Riddled with Surprise

The procedural element of unconscionability focuses on two factors: oppression and surprise. An arbitration agreement is oppressive if the arbitration obligation was imposed

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**

on the plaintiff as a take-it-or-leave-it condition of continued employment. The California Supreme Court has made clear that conditioning employment upon acceptance of an arbitration agreement generally satisfies the procedural portion of the unconscionability test in cases other than those few involving only "the most sought-after employees." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071) This is because, "[i]n the case of pre-employment arbitration contracts, the economic pressure exerted by the employer on all but the most sought after employees may be particularly acute." (*Ibid.*) And it's no mystery why: "[F]or the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Ibid.*)

Here, the agreement, despite its contents, was presented to Plaintiff as a condition of employment with Defendant. On December 27, 2023, after Plaintiff was offered the position, and as part of the new hire paperwork, Plaintiff was informed by Defendant that he must sign various documents, including, but not limited to, the arbitration agreement, tax forms, and "Lincare and Affiliates Memorandum of Employee's Agreement," which impose on Plaintiff certain duties regarding confidentiality. (Garate Decl., generally.) Plaintiff is a far cry from the most sought-after employees who could refuse or quite a job when presented with new hire documents to sign and verbally told said documents are mandatory for employment. Thus, there is no question that Plaintiff was provided with the arbitration agreement in an oppressive manner with no chance to refuse it.

Furthermore, a contract found to be oppressive is sufficient to achieve procedural unconscionability; evidence of "surprise" provides only *further* evidence of procedural unconscionability. *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 663. The surprise component is "a function of the disappointed reasonable expectations of the weaker party." *See e.g., Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1253.

Here, on December 27, 2023, Defendant required Plaintiff to sign various new hire documents in connection with his employment—yet Defendant never discussed with Plaintiff the contents of the arbitration agreement he was required to sign, and never told

him what arbitration was.  (Garate Decl., generally.) Plaintiff did not and would not have understood the arbitration agreement unless it was explained to him, which it was not. (*Id*.) Plaintiff did not at the time understand what arbitration is, or that his purported signature could jeopardize his ability to bring an action in court and/or with the aid of a jury against Defendant. (*Id*.)

In the present case, Plaintiff declares that at the time of signing the agreement, he was told that it was required for him to start working, and that he was not aware that he could ask questions; nor was it clear to Plaintiff whom he could speak with concerning the agreement or other new hire documents. (*Id*.) Plaintiff worked as a non-exempt employee without any experience or knowledge in legal terminology or the implications of arbitration and his right to a jury trial. (*Id*.) Further, Plaintiff did not participate in the drafting of the agreement, did not have any opportunity to negotiate its terms, and was not given time to consult counsel. (Garate Decl., ¶ 5.)

Importantly, the Declaration of Paula K. Adams in support of Defendant's Motion fails to demonstrate that Plaintiff was provided with an actual opportunity to participate or negotiate in the drafting of the agreement and provides no contrary evidence that the agreement was negotiable and/or was not presented on a take-it-or leave basis or that Plaintiff was ever even given a meaningful opportunity to review the alleged provisions. Thus, Plaintiff has established oppression and procedural unconscionability.

Making matters worse, since both the arbitration agreement and contemporaneous confidentiality provisions were required to be signed by Plaintiff within the same onboarding procedure (*i.e*, a single primary transaction), the two agreements should be read together in determining whether the agreement is unconscionable under the principles established by section 1642 of the Code of Civil Procedure. (See *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490-491 ["since the two agreements were part of a single transaction (Alberto's hiring and the dispute resolution procedure applicable to Alberto) unconscionability in the Confidentiality Agreement is relevant in determining whether the parties' agreement to arbitrate was unconscionable"].) Here, the fact that the

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**

confidentiality provision is included in a separate document that allows Defendant to sue Plaintiff in state or federal court for any breach of the agreement and obtain injunctive relief, while requiring Plaintiff to only pursue arbitration, further supports a finding of procedural unconscionability.

Finally, the arbitration agreement does not include an opt-out provision, thus increasing the level of procedural unconscionability. Courts must consider whether there was a "meaningful opportunity" to opt out. (*Circuit City Stores Inc. v. Ahmed* (9th Cir. 2002) 283 F.3d 1198, 1199.) Here, Defendant's arbitration agreement does not contain an express opt-out provision whatsoever.

Based on the foregoing, the agreement is highly procedurally unconscionable.

ii.    **The Arbitration Agreement is Substantively Unconscionable The Arbitration Agreement is Not Mutual as it Allows Defendant to Obtain Injunctive Relief Without Notice and to Recover its Attorneys' Fees and Costs.**

A "paramount consideration in assessing substantive conscionability is mutuality." (*Nyulassy v. Lockheed Martin Corp*. (2004) 120 Cal.App.4th 1267, 1281) The issue of mutuality of arbitration provisions was addressed in *Armendariz*, in which the California Supreme Court explained: "[g]iven the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness . . . . Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose." *Armendariz*, 24 Cal.4th at 116-19 ["An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party."]; *Fitz v. NCR Corp*., 118 Cal. App. 4th 702, 724-25 [arbitration agreement was "unfairly one-sided because it compels arbitration of the claims more likely to be brought by [the employee],

the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by [the employer], the stronger party"].) Consequently, an agreement to arbitrate is not mutual if is compels the employee, but not the employer to submit to arbitration. (*Kinney v. United Healthcare Services, Inc.* (1999) 70 Cal.App.4th 1322 [an arbitration agreement compelling the employee, but not the employer, to submit to arbitration, was unconscionable].)

In the present case, since both the arbitration agreement and confidentiality provisions found in the "Lincare and Affiliates Memorandum of Employee's Agreement" were required to be signed by Plaintiff within the same onboarding process in December 2023 (*i.e,* a single primary transaction), the two agreements should be read together. (See *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490–491 [" 'Under Civil Code section 1642, it is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract [citation].' "(Omitted) According to that rule, documents executed as part of a single transaction are construed together, even if they do not expressly refer to one another. (omitted); *Cadigan v. American Trust Co.* (1955) 131 Cal.App.2d 780, 786–787, ["it [is] unnecessary for either instrument to refer to the other"].)

Defendant's confidentiality provisions imposed on Plaintiff several legal duties/obligations, including, to not disclose, and to protect certain "Confidential Information" as defined by the agreement. Importantly, the provision allows Defendant to, "in addition to any other rights or remedies it may have hereunder, at law or in equity" (i) apply for and obtain an injunction **without notice** to enforce the provisions hereof against me and/or any person or entity acting on my behalf in violation hereof; and (ii) recover its reasonable attorneys' fees and costs." (Bokhour Decl., **Exhibit A** at Section 8.) (Emphasis added.)

Thus, the confidentiality provisions impose duties upon Plaintiff, not Defendant, and puts the power in Defendant's hands to enforce the agreement against Plaintiff in court and to seek equitable, injunctive relief, and specific performance. Defendant may also

exercise its right to obtain attorneys' fees against Plaintiff. As such, Defendant reserves for itself a unilateral right to file a lawsuit against Plaintiff in state or federal court and to seek injunctive relief and to seek prevailing party attorney's fees in connection with its responsibilities/duties under the confidentiality provisions. Plaintiff has no such equivalent rights and must pursue any and all claims against Defendant in arbitration. Defendant has no real justification for such unilateral provisions. This renders the agreement highly substantively unconscionable.

### 1. Defendant's Confidentiality Provisions Unfairly Prejudice Plaintiff's Abilities to Investigate His Claims or Conduct Adequate Discovery

Substantive unconscionability exists when an arbitration agreement imposes unduly harsh, oppressive, or one-sided terms. (*Armendariz*, 24 Cal.4th at 113.) Terms restricting discovery can favor defendants and be unduly harsh and oppressive even if they appear neutral on the surface. (*De Leon v. Pinnacle Prop. Mgmt. Servs.*, LLC (2021) 72 Cal. App. 5th 476, 487–88, 287 Cal. Rptr. 3d 402, 411). This particularly applies to "employment disputes" where the "outcomes are often determined by the testimony of multiple percipient witnesses" which the defendant has in "its employ" and "written information…[which] the employer already has in its possession." (*Baxter v. Genworth N. Am. Corp.* (2017) 16 Cal. App. 5th 713, 727, 224) (citing *Fitz*, supra, 118 Cal.App.4th at p. 717, 13 Cal.Rptr.3d 88.)

Importantly, to that extent, a confidentiality provision restricting parties from "informally contact[ing] or interview[ing] any witnesses outside the formal discovery process" supports a finding of substantial unconscionability. (*Ramos v. Superior Ct.* (2018) 28 Cal. App. 5th 1042, 1067, *as modified*.) This is because such a discovery restriction "unreasonably favors the employer to the detriment of employees seeking to vindicate unwaivable statutory rights" and potentially "discourage potential plaintiffs from filing discrimination cases." (*Id*.) (See *Hasty v. American Automobile Assn. etc.* (2023) 98 Cal.App.5th 1041, 1062 [we conclude the confidentiality clause in the arbitration

agreement benefits only the Association with respect to harassment, retaliation, and discrimination claims, such as the claims here, and is thus substantively unconscionable. **The fact that the provision applies to only the "extent permitted by law" does not save it because the employee would have no way of knowing what would be covered or not covered by this provision**."].) (Emphasis added.)

In the present action, Defendant's arbitration agreement contains a confidentiality provision which states:

> Any arbitration hereunder shall be confidential, and the Parties hereto, and their agents and the arbitrators **shall not disclose to any non-party the subject of the arbitration, any information about the arbitration or the substance of the proceedings thereunde**r, except as may be required by applicable law, for insurance purposes, or as necessary to enforce this Agreement or any award hereunder or in connection with a request for equitable or injunctive relief. (Emphasis added.)

Based on the strict confidentiality clause within the agreement itself, Plaintiff will be impeded from gathering information informally from third-parties or engage in in any discovery from third-parties or witnesses. Instead, Plaintiff is forced to engage in cost prohibitive formal discovery procedures to the extent they exist and is limited to obtain discovery from Defendant itself. This overboard confidentiality clause therefore functions as a restraint upon Plaintiff's ability to investigate, conduct discovery and harms Plaintiff's ability to gather evidence to prove his case. The fact that the agreement states, "except as may be required by applicable law," does not fix the crux of the issue because Plaintiff would have no way of knowing what would be covered or not covered by this provision. (See *Hasty, supra,* 98 Cal.App.5th at 1062.)

Therefore, this overbroad confidentiality provision, coupled with the separate confidentiality provision that grants Defendant the right to apply for injunctive relief without notice to Plaintiff, and to recover its attorneys' fees, renders the agreement highly substantively unconscionable.

/ / /

/ / /

## 2. The Arbitration Agreement Fails to Guarantee Plaintiff's Statutory Right to Attorneys' Fees as a Prevailing Party.

In direct contravention of California law, the agreement fails to include language that permits the recovery of attorneys' fees as required by relevant statue or law. The agreement thus undoubtedly abrogates Plaintiff's right to recover attorneys' fees as a prevailing party on his Labor Code claims. Here, if Plaintiff were to prevail on his Labor Code causes of action for unpaid minimum, overtime, and sick pay violations, and wage statement violations, he would statutorily be entitled to recover attorneys' fees under the Labor Code §§ 218.5, 226(a), 1194, 2802, and Code of Civil Procedure § 1021.5. By requiring Plaintiff to be responsible for compensating his own attorneys, the arbitration provisions deprive Plaintiff of unwaivable statutory remedies that will be available if he prevails on his various Labor Code claims. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 800 [arbitration agreement eliminating plaintiff's statutory right to recover attorney fees under Labor Code if she prevailed and imposing on her obligation to pay reasonable attorney fees in event employer prevailed was unconscionable; "[t]his violates Armendariz."])

Here, the agreement is insufficient to comply with public policy as it fails to provide for Plaintiff's statutory right to recover attorneys' fees as a prevailing party. The agreement makes no statement that would allow Plaintiff to seek attorneys' fees as a prevailing party under the Labor Code. To the contrary, the contemporaneous confidentiality provisions only permits an award of attorney's fees to a "prevailing party," who wins under that agreement-but the truth is that is clearly for the benefit of Defendant. The arbitration agreement includes no substantive guarantee that attorneys' fees "shall" be granted to a prevailing Plaintiff on the Labor Code claims. This is an attempt by Defendant to foreclose a successful employee's statutory right to recover attorneys' fees and leave it up to the discretion of the arbitrator. Defendant may argue that the provision contemplates that the arbitrator may reward those remedies. This argument has no support in case law or otherwise, including in the case it cited therefrom. However, in the context of mandatory

arbitration agreements in employment contracts, it has been squarely held that giving an arbitrator discretion to award costs in a manner inconsistent with the underlying statute violates public policy.

For example, in W*herry v. Award, Inc*. (2011) 192 Cal.App.4th 1242), the Court soundly rejected this argument, stating that authorizing the arbitrator to award such costs violates *Armendariz*, notwithstanding that the arbitrator also has the discretion to act consistently with the law. (*Id*.; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal. App. 4th 227, 251-52) [holding that a provision giving the arbitrator the authority to award all types of relief authorized by law does not "bless" an otherwise improper limitation on statutory rights])

Thus, in abrogating Plaintiff's right to the recovery of attorneys' fees under California Labor Code, the agreement seeks to further prevent Plaintiff from prosecuting his Labor Code claims, violates *Armendariz*, and therefore supports the conclusion that the agreement is highly substantively unconscionable.

### 3.   The Arbitration Agreement Grants Defendant a "Free Peak" at Plaintiff's Claims

An informal discussion can produce results that are overly harsh or one-sided to employees. (See *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1282-1283.) Without a neutral mediator present, it "suggests that defendant would receive a 'free peek' at plaintiff's cause, thereby obtaining an advantage if and when plaintiff were to later demand arbitration." (*Ibid*.)

Here, Section 1 of Defendant's agreement provides that, "[i]n the event that the Parties are unable to resolve any dispute arising out of, relating to or in connection with the employment relationship, **after meeting and attempting in good faith to reach a negotiated resolution**, such dispute(s) shall be resolved through binding arbitration." (Emphasis added.)

Indeed, the agreement requires that Plaintiff meet and attempt to negotiate a resolution, but also fails to state the exact terms of such "good faith" negotiations. Plaintiff,

who is not sophisticated and without counsel, is required to meet in person and negotiate without the aid of counsel or the presence of a mediator. In this process, Plaintiff would likely disclose his evidence and theories in support of his claims without any safeguards. As a result, Defendant would receive an unfair "free peak" into Plaintiff's claims at issue, and thereby obtain an advantage if and when Plaintiff were to demand arbitration.

This further supports the conclusion that the agreement is highly substantively unconscionable.

### 4.   The Arbitration Agreement's Wholesale PAGA Waiver is Substantively Unconscionable

Contracts are substantively unconscionable when their terms "are 'unreasonably favorable to the more powerful party.'" (*Baxter*, 16 Cal. App. 5th at 723 (citing and quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013)). Indeed, California courts have found that many of the Labor Code provisions are for the public good, and therefore cannot be waived by an employee. Nevertheless, the agreement provides that the employee waives:

> [A]ny right to submit, initiate or participate in any class, collective, consolidated, representative or joint action involving any employee, consultant, contractor, vendor or other third party of Lincare, whether as a plaintiff, claimant or member of an alleged class or group, regardless of whether the action is filed as a lawsuit, arbitration or any other type of proceeding. In addition, the Parties mutually waive the right to bring, maintain, participate in or receive money from any class, collective or representative proceeding." (Adams Decl., Exhibit 1, Section 6.)

For starters, this wholesale PAGA waiver violates the central holding in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348, 383 (2014), disapproved on another ground as stated in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). The Court of Appeal in *Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035 (2022) recently reaffirmed that, even post-*Viking River*, PAGA waivers are unenforceable as against public policy. Here, the agreement's waiver is uniquely broad as it requires the employee to waive the right to "**receive money or any other relief from any class, collective or**

1  **representative proceeding.**" This is a pre-dispute waiver barred by California Law and
2  Labor Code Section 206.5(a), which provides:

3       An employer shall not require the execution of a release of a claim or right on
4       account of wages due, or to become due, or made as an advance on wages to
5       be earned, unless payment of those wages has been made. A release required
6       or executed in violation of the provisions of this section shall be null and void
7       as between the employer and the employee. Violation of this section by the
8       employer is a misdemeanor.

9       While employees can release wage claims where the wages are disputed and all
10 wages concededly due are paid, the alleged agreement forbids the employees from
11 receiving wages even where a court determines they are owed-for example, by way of a
12 Class Action settlement. The same release as to PAGA penalties and injunctive and
13 equitable relief including under the UCL (Bus. & Prof. Code § 17200 et seq.), are equally
14 invalid as they seek to insulate the employer from liability from the State's Labor Code
15 enforcement efforts and from remedies for unlawful business acts and practices, all of
16 which would redound directly to the public's benefit. (See, e.g., *Stop Youth Addiction, Inc.*
17 *v. Lucky Stores, Inc.*, 17 Cal.4th 553, 576 (1988) ("[T]he UCL embodies 'the policy of
18 permitting members of the public to police the spectrum of 'unfair competition.'"). Civil
19 Code section 1608 makes void the entire contract, "[i]f any part of a single consideration
20 for one or more objects, or of several considerations for a single object, is unlawful...."

21      As set forth above, this unlawful wholesale PAGA waiver renders the agreement
22 further substantively unconscionable.

23      **5.    The Arbitration Agreement Fails to Carve-Out Plaintiff's**
24           **Right to Seek Enforcement of Labor Code Claims by Way**
25           **of a Berman Hearing**

26      Here, the arbitration agreement is substantively unconscionable because it fails to
27 allow Plaintiff to utilize the Berman Hearing procedure to resolve wage and hour disputes,
28 where representation by the Labor Commissioner would be free. While a waiver of the

Berman procedures is not "categorically unconscionable" in wage and hour cases courts "have taken a different approach in evaluating [] compelling arbitration … [as] [e]mployees who agree to arbitrate claims for unpaid wages forgo not just their right to litigate in court, but also their resort to an expedient, largely cost-free administrative procedure.

We explained repeatedly in *Sonic II* that, while the waiver of Berman procedures does not in itself render an arbitration agreement unconscionable, the agreement must provide *in exchange* an accessible and affordable forum for resolving wage disputes. [citation] No specific procedures are required. [citation] But the arbitral scheme must offer employees an effective means to pursue claims for unpaid wages, and not impose unfair costs or risks on them or erect other barriers to the vindication of their statutory rights. [citation] When imposed in a procedurally unconscionable fashion, such barriers to the vindication of rights may become unenforceable … An arbitration procedure may not impose such costs or risks on wage claimants that it 'effectively blocks every forum for the redress of disputes, including arbitration itself.' [citation]" *(See OTO, L.L.C. v. Ken Kho*, 8 Cal.5th 111, 133-34 (Cal. 2019)

In the present matter, Plaintiff is an unsophisticated "Delivery Driver/Service Representative" who has no legal training. However, the arbitration agreement here calls for procedures that are no less complicated than ordinary civil litigation, just as the agreements analyzed by the California Supreme Court in *Oto v. Kho*. Here, the arbitration agreement waives Plaintiff's right to a Berman hearing, where an employee "can secure free legal assistance from the Labor Commissioner, both at the Berman hearing and in any subsequent appeal." *Id.,* 134. However, in return Plaintiff obtains an unaffordable and complicated arbitral process that would most likely require Plaintiff to hire an attorney, and with no guarantee of recoverable attorneys' fees. Just as in *Oto v. Kho*, the arbitration agreement is substantively unconscionable because it waives Plaintiff's right to Berman Hearings and fails to in any way mention, let alone protect, Plaintiff's right to recover his attorneys' fees as granted by the Berman hearing process. As the California Supreme

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PETITION TO COMPEL ARBITRATION**

Court noted in *Oto v. Kho*,

> By signing the agreement, Kho surrendered the full panoply of Berman procedures and assistance we have described. What he got in return was access to a formal and highly structured arbitration process that closely resembled civil litigation *if* he could figure out how to avail himself of its benefits and avoid its pitfalls. Considering the unusually coercive setting in which this bargain was entered, we conclude it was sufficiently one-sided as to render the agreement unenforceable. (See *OTO, L.L.C. v. Ken Kho*, 8 Cal.5th 111, 136-37 (Cal. 2019) (emphasis added)

As a result, similar to the California Supreme Court's reasoning in *Oto v. Kho*, this Court shall also rule that the arbitration agreement is substantively unconscionable because "an unconscionability analysis must be sensitive to context [and] [c]ontext includes both the commercial setting and purpose of the arbitration contract and any procedural unconscionability in its formation." (*Id.* at 136.)

### c.  <u>The Arbitration Agreement's Unconscionability Cannot be Cured</u>

Defendant may argue that this Court should sever the unconscionable provisions in Defendant's arbitration agreement and enforce the remainder of it.  However, "an arbitration agreement permeated by unconscionability, or one that contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced."  (*Armendariz,* 24 Cal.4th at 127.)  Here, the purported arbitration agreement is too permeated within the employment relationship to be cured and thus should not and cannot be enforced.  In *Armendariz,* for example, "two factors weigh[ed] against severance of the unlawful provisions." (*Id.* at 124.) "First, the arbitration agreement contain[ed] more than one unlawful provision," "indicat[ing] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employee's advance." (*Ibid.,* emphasis added; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 639.) "Second, in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Id.* at 124-125.) "Rather, the court would have to, in effect, reform

the contract, not through severance or restriction, but by augmenting it with additional terms." (*Id.* at 125.)  "Because a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, *it must void the entire agreement*," which the Court in *Armendariz* did. *Ibid.*, italics added.  Subsequent decisions have, in turn, refused to sever agreements that contains more than one unconscionable provision.  (*See Fitz*, 118 Cal.App.4th at 726-727; *see also Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 639 [*Carlson*].)

As detailed above, Defendant's agreement contains multiple unconscionable provisions that "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employee's disadvantage." (*See Armendariz.* 24 Cal.4th at 124.) Also, like *Armendariz* and its progeny, no severance or reformation of one provision, or even multiple provisions for that matter, would cure the purported arbitration agreement. For instance, the Court cannot sever multiple unlawful provisions without modifying the entire agreement. Moreover, the interests of justice – the "overarching" consideration in the severability determination (*Armendariz*, 24 Cal.4th at 124) – are not served by severance here.  In *Armendariz*, the Supreme Court identified two policy reasons for severing objectionable terms.  The first is to "conserve the contractual relationship;" and the second is to "prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement." (*Id.* at 123-124.) The first stated policy is inapplicable where the contractual relationship has already ended, as it has here.  (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 667 ["now that the parties' employment relationship has ended … there obviously is no contractual relationship to preserve"]; *accord Fitz*, 118 Cal.App.4th at 727.) Nor is the second stated policy applicable here as, under the circumstances, severance of the multiple unlawful provisions would *produce*, not *prevent*, the production of an undeserved benefit. (See *Armendariz*, 24 Cal.4th at 124 ["multiple defects indicate a systematic effort to impose … on an employee … an inferior forum that works to the employee's disadvantage"].)

Thus, Defendant cannot save the agreement even by severance. As such, per *Armendariz*, this Court must void the agreement, and deny Defendant's Motion in its entirety.

## IV.   <u>CONCLUSION</u>

Pursuant to the above, Defendant's Motion to Compel Arbitration should be denied in its entirety because Plaintiff is exempt from arbitration under the FAA, and/or Defendant's arbitration agreement is procedurally and substantively unconscionable.

Dated:  June 14, 2024            **BOKHOUR LAW GROUP, P.C.**
                                 **FALAKASSA LAW, P.C.**


                                 By:   _____
                                       MEHRDAD BOKHOUR
                                       JOSHUA FALAKASSA
                                       ZACHARY CAVANAGH
                                       Attorneys for Plaintiff and the Putative
                                       Classes

## PROOF OF SERVICE

**United States District Court, Southern District of California**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067.

On June 14, 2024, I served the following document(s) described as **PLAINTIFF IGNACIO GARATE'S OPPOSITION TO DEFENDANT LINCARE, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS** on the interested parties in this action as follows:

David L. Cheng, Esq.
dcheng@fordharrison.com
Jason Shon, Esq.
jshon@fordharrison.com
FORD & HARRISON, LLP
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071

***Counsel for Defendant Lincare, Inc.***

**By CM/ECF Notice of Electronic Filing:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by court rules.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 14, 2024, at Los Angeles, California.

_____
Zachary Cavanagh