Ford & Harrison LLP
David L. Cheng (SBN 240926)
dcheng@fordharrison.com
Jason Shon (SBN 306198)
jshon@fordharrison.com
350 South Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone:  213-237-2400
Facsimile:   213-237-2401

Attorneys for Defendant
LINCARE INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO GARATE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINCARE INC., a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:24-cv-0768-CAB-MSB<br><br>[Assigned to Hon. Cathy Ann Bencivengo and Magistrate Hon. Michael S. Berg]<br><br>**DEFENDANT LINCARE INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS**<br><br>Date:      June 28, 2024<br>Time:      PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br>Courtroom:  15A<br><br>Trial Date: None Set<br>Date Action Filed: March 27, 2024<br>Removal Filed: April 29, 2024 |

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

CASE NO. 3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

## I.    INTRODUCTION

Plaintiff argues in his Opposition that he is exempt from arbitration as a "transportation worker" under the FAA and that the arbitration agreement was procedurally and substantively unconscionable. The "transportation worker" exemption under the FAA does not apply to Plaintiff because, among his many duties, he only delivered medical equipment locally that he configured and tested prior to delivering them to the location—where he installed and serviced the equipment. Plaintiff's intrastate duties were therefore not part of the "continuous stream of interstate commerce" like in the cases where intrastate delivery drivers who performed the "last mile" of delivery were found to be exempt from the FAA.

The arbitration agreement is also not unconscionable despite Plaintiff's self-serving declaration. Defendant presented the arbitration agreement two weeks after Plaintiff was already hired and the agreement contained all the necessary disclosures, including his right to review the terms with an attorney. Plaintiff cannot assert that procedural fairness required Defendant to sit down and explain the terms to him. In addition, the arbitration agreement is not substantively unconscionable because it satisfies the core requirements under *Armendariz*. In opposition, Plaintiff does not argue why there is unconscionability under *Armendariz* but rather argues that the agreement was required to *affirmatively* state certain language about his rights. There is no such duty or requirement in the cases cited by Plaintiff.

Finally, Plaintiff fails to address that the agreement's delegation clause "clearly and unmistakably" delegates disputes concerning "any and all procedural, substantive and gateway issues, including, without limitation, any dispute between the Parties relating to the scope of the arbitrator's powers, the interpretation or enforceability of this Agreement or any part thereof, or the arbitrability of any dispute" to the arbitrator. *See* Adams Decl., Ex. 1. Despite clear and binding United States Supreme Court authority to the contrary, Plaintiff impermissibly asks the Court to decide these issues. The Court

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

must decline Plaintiff's invitation to do so, and order these issues to be decided by an arbitrator, as the delegation clause and the law requires.

**II.      Plaintiff is Not Exempt as a "Transportation Worker" under the FAA**

Section 1 of the FAA contains a transportation worker exemption, which exempts from coverage of the FAA all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In *Circuit City Stores Inc. v. Adams*, 532 U.S. 105, 112 (2001), the Supreme Court defined "transportation workers" as "those workers actually engaged in the movement of goods in interstate commerce."

In *Rittmann v. Amazon.com, Inc*., 971 F.3d 904, 915 (9th Cir. 2020), the Ninth Circuit held that delivery drivers for Amazon, who picked up interstate goods from warehouses and transported them intrastate for the "last leg of shipment" were exempt under the FAA. In so holding, the Ninth Circuit stated, "Amazon packages do not 'come to rest' at Amazon warehouses, and thus the interstate transactions do not conclude at those warehouses. The packages are not held at warehouses for later sales to local retailers; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys. The interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations, and thus [] drivers are engaged in the movement of interstate commerce." *Id.* at 916.

In *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788, the Supreme Court held that the FAA "exempts classes of workers based on their conduct, not their employer's, and the relevant class therefore includes only those [] employees who are actually engaged in interstate commerce in their day-to-day work." (Internal citations omitted). Following *Saxon*, the Ninth Circuit decided *Carmona Mendoza v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. 2023), a case involving "last leg" delivery drivers like in *Rittmann*. In affirming *Rittmann* post-*Saxon*, the Ninth Circuit held that the delivery drivers were exempt because "the goods in this case were

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

inevitably destined from the outset of the interstate journey" and the "pause in the journey of the goods at the warehouse" did not "remove them from the stream of interstate commerce." *Id.* Whether making the "last leg" delivery of goods intrastate represents "one continuous stream of commerce" is determined by whether the delivered goods were "transformed or altered" at the warehouses before delivery. *See id.* at 1137.

Here, Plaintiff was a Service Representative. His principal duties were to install and perform preventative maintenance on medical equipment (oxygen tanks) for various facilities in San Diego County.  An ancillary part of those duties was that he picked up and delivered—locally from Defendant's facility or its customers in the San Diego area—the tanks when they needed further servicing, such as replacing a broken or empty tank. Bustamante Decl. ¶ 2.; *see also* Ex. 4 to *id.* [attaching Service Representative Job Description].[1] At no point did Plaintiff transport goods across state lines. Bustamante Decl. ¶ 3.  Specifically, once he brought a tank back to Defendant's facility, if the tank needed re-filling, that tank would then be picked up by a third party and transported to that third-party's facility in Coronado, California, where the third party would refill the tank with oxygen—all with materials drawn from within the state—then return the tank to Defendant's facility. To be clear, in most cases, Defendant's customer would not receive the same tank; rather, if the customers' tanks were broken, or, there were replacement tanks available at Defendant's facility, Service Representatives like Plaintiff would simply retrieve replacement tanks at Defendant's facility, then, prior to loading them into their vehicle, actively configure the tanks for use, then test, inspect and conduct preventative maintenance to ensure they are in working order **before** transporting and delivering them to locations within California. Bustamante Decl. ¶ 4. Plaintiff

---

[1] Because the applicability of the Federal Arbitration Act was raised for the first time in opposition, district courts may consider Defendant's response and evidence on rebuttal.  *See, e.g., United States v. Taibi*, 2012 WL 553143, *4 (S.D. Cal. Feb. 21, 2012).

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

did not transport oxygen tanks between Defendant's facility and the third party's Coronado facility. Bustamante Decl. ¶ 5. Plaintiff's average day started at Defendant's facility where, after conducting functions checks on the tanks, configuring them, and maintaining them, he would load the tanks and other installation equipment onto his truck; deliver, install and service the tanks at the customers' sites; then pick up any tanks for further servicing before returning to the facility at the end of the day. Bustamante Decl. ¶ 7.

Given his job duties, Plaintiff cannot demonstrate that he was engaged in the "continuous stream of commerce." Unlike the delivery drivers in *Rittmann* and *Mendoza*, Plaintiff did not transport interstate goods on the "last leg" of delivery— nor was he directly involved in the movement of goods that crossed state lines. Regardless of whether any tanks actually crossed state lines before arriving at a third-party's facility—a step in the stream of commerce to which Defendant is not involved—once at Defendant's facility, the tanks are serviced before delivery and customers generally do not receive the same tank that was picked up for service or replacement. Although Service Representatives transport replacement tanks from Defendant's facility to local customers, that is ancillary to the Service Representatives' principal duties of configuring, maintaining, inspecting and testing the tanks, followed by installing the tanks at the customers' facility. Notwithstanding Plaintiff's arguments to the contrary, Plaintiff's delivery duties are clearly not a part of a continuous movement of goods across state lines, but, rather, are distinct set of local deliveries. Courts with similar facts have found the FAA's exemption to not apply. *See Immediato v. Postmates, Inc.*, 54 F.4th 67, 79-80 (1st Cir. 2022); *Wallace v. Grubhub Holdings, Inc.*¸ 970 F.3d 798, 801-803 (7th Cir. 2020).

Plaintiff's declaration that Defendant's goods "were involved in interstate commerce" upon his "information and belief" is unfounded and wholly speculative. Garate Decl. ¶ 4. Specifically, Plaintiff declares that "while making at least one delivery to a hospital, Sharp Chula Vista Medical Center, I was informed that the

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

goods I delivered would then be sent to the end users in Florida." Garate Decl. ¶ 4. To claim that "end users in Florida" would source oxygen tanks that need to be refilled on a constant basis from California instead of a local supplier is conjecture. In any event, what third party Sharp Chula Vista Medical Center chooses to do with the oxygen tanks has nothing to do with Defendant or Plaintiff's job duties and Section 1's exemption does not apply to Plaintiff.  Moreover, the fact that Plaintiff can only recall a single instance when goods he delivered may—eventually—cross state lines at some point in the future does not make him exempt from the FAA.  *See Lopez v. Cintas Corp.*, 47 F. 4th 428, 432-33 (5th Cir. 2022) (concluding a service representative who only incidentally transported items from a local warehouse to local customers is not exempt from the FAA, noting that the exemption applies only to workers actively, not incidentally, engaged in the interstate transportation).

**III.    The Arbitration Agreement is Not Procedurally or Substantively Unconscionable**

### a.  Only Extremely Low Procedural Unconscionability Exists

Plaintiff contends that the agreement is procedurally unconscionable because it "was presented to Plaintiff as a condition of employment." Opp. at 7:11-12. An arbitration agreement is not unconscionable simply because its execution is a mandatory condition of employment. *See Fittante v. Palm Springs Motors, Inc*., 105 Cal. App. 4th 708, 720 (2003) (holding that where "the arbitration agreement complies with the requirements of *Armendariz*, it may properly be enforced, even though it was required as a condition of employment").

Defendant does not contest that the agreement has some characteristics of a contract of adhesion but there was no oppression or unfair surprise in the manner it was presented.  Plaintiff was hired on December 15, 2023 and signed the agreement on December 27, 2023. *See* Adams Decl. ¶¶ 4-5. Plaintiff's declaration tellingly omits these dates and he fails to identify the person who purportedly told him "that he was required to sign the onboarding documents as is on a 'take-it-or-leave-it' basis." Garate Decl. ¶ 5. The arbitration agreement was provided to Plaintiff as a standalone

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

document after he was already hired and there was no surprise because the agreement included a statement of acknowledgment of its terms and the opportunity to review the same in bold, capital letters which Plaintiff signed.

Plaintiff also argues that Defendant failed to take affirmative acts it was under no duty to perform. Defendant did not need to "discuss[] with Plaintiff the contents of the arbitration agreement," nor tell "him what arbitration was," nor make it "clear to Plaintiff whom he could speak with concerning the agreement . . . ." Opp. at 7:26-8:9. None of the cases Plaintiff cites imposes such a duty on the employer and it is unreasonable for Plaintiff, who does not contend that English is not his native language, to assert that the only way for him to have understood the arbitration agreement was if "it was explained to him." *Id.*

In addition, Plaintiff's attempt to incorporate a separate document containing a "confidentiality" clause into the arbitration agreement is unpersuasive and inconsistent with the "Entire Agreement" clause in the latter. The "confidentiality" clause is not part of a "single primary transaction" since it was signed on December 5, 2023 (*see* Bokhour Decl., Ex. A) and the arbitration agreement was signed on December 27, 2023. *Cf. Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 490–91 (2023) ("[W]e have no difficulty concluding that the Arbitration Agreement and the Confidentiality Agreement should be read together. They were executed on the same day"). Here, the two documents serve different purposes— one concerns maintaining confidentiality of business information; the other concerns disputes arising out of the employment relationship. Accordingly, the facts here present only a low level of procedural unconscionability under *Armendariz*.

### b. There Are No Substantively Unconscionable Terms and Even If There Were, Those Terms Can be Severed

Plaintiff argues that the arbitration agreement is substantively unconscionable due to factors that are not pertinent under *Armendariz*. *First*, the arbitration agreement does not preclude Plaintiff's right to recover attorneys' fees as a *prevailing*

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

*party*. Opp. at ¶ 13:17-24. The agreement expressly provides the arbitrator with authority to award "remedies as could be awarded by a court under the applicable substantive law" and "[i]f and to the extent the arbitrator *under applicable law affords an award of attorneys' fees and costs to the prevailing Party*, then the arbitrator *shall* apply the same standards a court would apply to award such attorneys' fees and costs." Adams Decl., Ex. 1, para. 7(d) (emphasis added). Defendant does not dispute that Plaintiff would be entitled to attorneys' fees as a prevailing party and the clear terms expressly require the arbitrator to award fees if Plaintiff prevails. The fact that Plaintiff could be responsible for his own attorneys' fees and costs if he *does not* prevail does not deprive him of any statutory right to fees. The attorneys' fees provisions in the cases Plaintiff cites are distinguishable. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 778 (2012) (term requires employee to pay employer if he does not prevail); *see also Wherry v. Award, Inc.,* 192 Cal. App. 4th 1242, 1249 (2011) (agreements provide that the prevailing party is entitled to attorneys' fees, irrespective of any limitations set forth by statute).

*Second*, Plaintiff argues the arbitration agreement requires Plaintiff to provide Defendant a "free peak (sic)" at his claims, citing *Nyulassy v. Lockheed Martin Corp*., 120 Cal. App. 4th 1267, 1282 (2004). The agreement in *Nyulassy* required the employee "as a precondition to arbitration . . . to attempt to resolve any employment disputes by engaging in discussions with various levels of management" and waived the plaintiff's arbitration remedy if he did not exercise it within 180 days of termination. *Id.*at 1273. Here, there is no such prerequisite or similar language that would cause Plaintiff to waive his arbitration remedy.  Even so, Plaintiff's argument has been rejected. *See, e.g.*, *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 710-11 (2013); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1139-40 (C.D. Cal. 2011).

*Third*, Plaintiff argues that the agreement is substantively unconscionable because it fails to allow Plaintiff to utilize the Berman Hearing procedure to resolve wage and hour disputes for free. Opp. at 16:26-28. "[A]n arbitration agreement is not

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

categorically unconscionable solely because it entails a waiver of the Berman procedure. . . .   An agreement to arbitrate wage disputes can be enforceable so long as it provides an accessible and affordable process for resolving those disputes." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 118 (2019). "[A]rbitration can be structured in various ways so that it facilitates accessible, affordable resolution of wage disputes, without necessarily replicating Berman protections [s]o long as the arbitral procedure is relatively low-cost and provides a forum for wage claimants to pursue their claims effectively, its adoption in lieu of the Berman process will not, in itself, be considered unconscionable." *Id.* at 124 (internal citations and quotations omitted). Plaintiff here is offered a low-cost, alternative forum to pursue his wage claims because Defendant is paying for the arbitration.  Even so, Plaintiff is not seeking a Berman hearing. *Azizian v. Spearmint Rhino*, 2020 WL 5415387, *6 (C.D. Cal. Mar. 13, 2020).

*Fourth*, Plaintiff's argument that the agreement includes a "wholesale PAGA waiver" is also irrelevant because there is no PAGA claim. Opp. at 15:21-27. *Sabouhi v. Starbucks Corp.*, 2022 WL 2101727, at *6 (C.D. Cal. Mar. 14, 2022) ("Courts have allowed invalid PAGA waivers to be severed and upheld otherwise valid arbitration agreements, particularly where, as here, the plaintiff has not asserted any PAGA claims and the agreement allows for severability of such terms."). In any event, there is no "wholesale PAGA waiver" because the agreement precludes Plaintiff from participating in representative actions but expressly permits Plaintiff to pursue his individual claims for wage and hour violations. Under *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022), it is beyond dispute that separating individual and representative claims like this is permissible. *Id.* ("We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate. . . . The lower courts refused to [mandate arbitration of Moriana's individual PAGA claim ] based on the rule that PAGA actions cannot be divided into individual and non-individual claims…. Viking is entitled to compel arbitration of Moriana's individual claim").

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

*Fifth*, Plaintiff argues that the Court must read the "confidentiality" agreement and the arbitration agreement together and find that there is a lack of "mutuality" because the confidentiality agreement allows Defendant to obtain injunctive relief against Plaintiff and otherwise restrict Plaintiff's ability to investigate his claims. As discussed above, these documents were signed weeks apart and the later-signed arbitration agreement is the "entire agreement" that clearly permits Plaintiff to bring any claims arising out of the employment relationship.

Finally, to the extent Plaintiff claims he is somehow prevented from conducting discovery under the confidentiality clause, the arbitration agreement expressly permits him to conduct discovery pursuant to California procedure. Adams Decl., Ex. 1., para. 8. Even if there were any substantively unconscionable provisions, those provisions should be severed and the remainder of the agreement enforced. *See* Adams Decl., Ex. 1., para. 8; *see Lang v. Skytap, Inc*., 347 F. Supp. 3d 420, 433 (N.D. Cal. 2018) (finding that three offending provisions can be severed without disrupting the agreement's chief objective).

## IV. The Issue of Enforceability and Interpretation of the Arbitration Agreement is Itself Subject to Arbitration

Plaintiff does not address Defendant's argument that any disputes regarding enforceability or interpretation of the arbitration agreement are arbitrable. *See* Mot. at 15; *see also* Adams Decl. ¶ 5, Ex. 1 at ¶ 3. Accordingly, every argument raised by Plaintiff in his Opposition should be decided in arbitration. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

## V. CONCLUSION

Defendant respectfully requests that the Court grant its Motion.

Dated:         June 21, 2024

FORD & HARRISON LLP

By: /s/ David L. Cheng
    David L. Cheng
    Jason Shon

Attorneys for Defendant
LINCARE INC.

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

3:24-CV-0768-CAB-MSB
DEFENDANT'S MOTION TO COMPEL
ARBITRATION

# PROOF OF SERVICE

I, D'Metria Bolden, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 350 South Grand Avenue, Suite 2300, Los Angeles, California 90071.

On **June 21, 2024**, I served a copy of the following document(s) described below on the interested parties in this action, as follows:

**DEFENDANT LINCARE INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS**

Mehrdad Bokhour, Esq.
BOKHOUR LAW GROUP, PC
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Tel.:  (310) 975-1493
Fax:  (310) 675-0861
Email: mehrdad@bokhourlaw.com

Attorneys for Plaintiff, IGNACIO GARATE and the Putative Classes

Joshua S. Falakassa, Esq.
FALAKASSA LAW, P.C.
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Tel.:  (818) 456-6168
Fax:  (888) 505-0868
Email: josh@falakassalaw.com

☒ **ELECTRONICALLY:**  I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.

☒ **FEDERAL:**  I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America and State of California that the above is true and correct.

Executed on **June 21, 2024**, at Los Angeles, California.

_____
D'Metria Bolden