UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO GARATE, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>LINCARE, INC.,<br><br>  Defendant. | Case No.: 24-cv-768-CAB-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS [Doc. No. 6]** |

On May 24, 2024, Defendant Lincare, Inc. ("Defendant") filed a motion to compel arbitration, dismiss claims, and stay proceedings. [Doc. No. 6.] On June 14, 2024, Plaintiff Ignacio Garate ("Plaintiff") filed an opposition. [Doc. No. 8.] On June 21, 2024, Defendant filed a reply. [Doc. No. 9.] On July 16, 2024, this Court issued an order requesting supplementation of the record. [Doc. No. 10.] On August 1, 2024, the parties filed supplemental briefing. [Doc. Nos. 11 and 12.] On August 9, 2024, the parties filed replies to the supplemental briefings. [Doc. Nos. 13 and 14.] Pursuant to Civ.LR. 7.1.d.1, the Court deems oral argument to be unnecessary. For the reasons set forth below, the motion to compel arbitration, dismiss class claims, and stay proceedings is **DENIED.**

/ / / / /

/ / / / /

## PROCEDURAL BACKGROUND

On March 27, 2024, Plaintiff, individually, and on behalf of others similarly situated, filed a complaint against Defendant, entitled "IGNACIO GARATE, an individual, and DOES 1 through 50, inclusive," in the Superior Court of California, County of San Diego, Case No. 37-2024-00014437-CU-OE-CTL (hereinafter, the "Complaint"). According to the Complaint, Defendant offers respiratory care, infusion therapy, and medical equipment to patients throughout California and the United States. [Doc. No. 6-2 at 7, ¶15.] The Complaint further alleges that Plaintiff was employed by Defendant as a non-exempt employee with the title of "Service Driver" out of its San Diego, California location, beginning on December 16, 2023, until his separation from employment on March 1, 2024. [Doc. No. 6-2 at 2, ¶16.] Finally, the Complaint alleges eight causes of action which Plaintiff pursues on a class-wide basis: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) meal period violations; (4) rest period violations; (5) failure to pay all sick time; (6) wage statement violations; (7) waiting time penalties; and (8) unfair competition. [Doc. No. 6-2.]

On April 29, 2024, Defendant removed the case to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). [Doc. No. 1.]

On May 24, 2024, Defendant filed this motion to compel arbitration, dismiss class claims, and stay proceedings. [Doc. No. 6.] Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 3 and 4, on the grounds that Plaintiff entered into a valid and enforceable arbitration agreement ("Arbitration Agreement") requiring arbitration of his individual claims and waived his right to initiate or participate in class-wide claims. Defendant seeks to arbitrate Plaintiff's individual claims and to dismiss his class claims pursuant to the Agreement. [Doc. No. 6.] Plaintiff does not dispute the existence of the Agreement or its applicability to this action. [Doc. No. 8 at 5.] Instead, Plaintiff challenges the enforceability of the Agreement, arguing that (1) Plaintiff is exempt from the FAA as a transportation worker; (2) the Agreement is procedurally and substantively unconscionable; and (3) the Agreement's

unconscionability cannot be cured. [Doc. No. 8 at 3 - 18.] As set forth below, the Court finds that Plaintiff is exempt from the FAA as a transportation worker and, therefore, does not reach the other issues raised by Plaintiff.

## FACTUAL BACKGROUND REGARDING FAA EXEMPTION

According to its website, Defendant is "[h]eadquartered in Clearwater, Florida," and is the "leading respiratory supplier in the country, serving approximately 1.8 million patients from the comfort of their homes." *See* https://www.lincare.com/en/why-lincare/about-lincare. Indeed, "Lincare provides [a] variety of home health care services that can be delivered … throughout the United States." [Doc. No. 6-1, "Adams Decl.," ¶ 2.]

Plaintiff worked as a "Delivery Driver and Service Representative" for Defendant's medical equipment and supply business in San Diego, California. [Doc. No. 8-2, "Garate Decl.", ¶ 3; Doc. No. 8-1, "Bokhour Decl.", Exs. B & C.] As a Delivery Driver, Plaintiff's job responsibilities included, but were not limited those listed in his job description: Deliver medical equipment, oxygen, and supplies to customers in a safe, courteous, and timely manner; Instruct patients on the safe and appropriate use of medical equipment; Follow patient orientation checklists during delivery and training of new patients; Conduct daily deliveries; Equipment set up; Inspect delivery vehicle and ensure the safety of the loading and unloading process; Maintain cleanliness and organization of delivery vehicle and warehouse, and adhering to all FDA protocols. [Garate Decl., ¶ 3; Bokhour Decl., Exhibit D.] Plaintiff was also required to have a Commercial Driver's License and be either DOT qualified or certifiable. [Doc. No. 8-1 at 12.]

Plaintiff's job duties included delivering oxygen tanks and medical equipment other than oxygen tanks, such as portable and free-standing oxygen concentrators, nebulizers, and medical accessories, like nasal cannula, humidifier bottle, oxygen supply tubing, and oxygen masks. [Doc. No. 12-1, "Garate's Supp. Decl.", ¶ 4; Doc. No. 11-1, "Bustamante Supp. Decl."], ¶2.] In addition to the oxygen tanks, Plaintiff regularly

delivered this medical equipment, which was new in the packaging, to Defendant's clients as a regular part of his daily and weekly job duties. [Garate's Supp. Decl., ¶ 4.]

As it pertains to the oxygen tanks, Plaintiff was required to configure the oxygen tanks, which occurred after delivery in the presence of the client. The configuration of the oxygen tanks involved turning a single knob on the tank to show the client how to "turn on" the oxygen tank, and demonstrate that it was worked. [Garate's Supp. Decl., ¶ 5.] Furthermore, Plaintiff was also required to demonstrate to the clients how to attach and use the new accessories for the oxygen tanks. [Garate's Supp. Decl., ¶ 5.] Plaintiff's job duties and responsibilities related to "servicing" Defendant's oxygen tanks included recording the serial numbers and operating hours of each tank. [Garate's Supp. Decl., ¶ 5.]

All oxygen tanks, new or used, are sourced from a third-party facility near Coronado. [Bustamante Supp. Decl., ¶3.] Oxygen concentrators and portable oxygen concentrators are sourced from a hub station in Arizona. [Bustamante Supp. Decl. ¶4.] Nebulizers and regulators are sourced from various manufacturers and/or suppliers and Lincare does not know whether these parts always cross state lines before they arrive at Lincare's facility because they are sourced from suppliers based on whether they have inventory. [Bustamante Supp. Decl., ¶5.] All medical equipment that arrive at Lincare's facility are opened from their packaging to undergo testing and inspection, even if they are new, and then Service Representatives install the equipment at the customer location, perform functions checks, and instruct customers on the safe and proper use of the equipment. [Bustamante Supp. Decl., ¶ 6.][1]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires the district courts to compel arbitration on all claims subject to arbitration agreements. *See Dean Witter Reynolds, Inc.*

---

[1] Defendant objects to certain evidence provided by Plaintiff. *See* Doc. No. 14-1. However, the Court does not rely on that evidence. As such, Defendant's objections are **DENIED AS MOOT**.

*v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 - 4) ("By its terms, the Act [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). The FAA creates a general presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25 (1991). A court must interpret arbitration provisions liberally, resolving doubts in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Under the FAA, a party moving to compel arbitration must show two things: "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The party seeking arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Because the FAA favors arbitration, the burden is on the plaintiff to prove that the arbitration agreement is, in fact, unenforceable. *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("[T]hose parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable.").

**DISCUSSION**

Defendant moves to compel arbitration under Sections 3 and 4 of the FAA. Plaintiff argues he is exempt from the FAA under Section 1 because he is a transportation worker.

"The FAA generally provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Rittmann v. Amazon.com, Inc.* ("*Rittman*"), 971 F.3d 904, 909 (9th Cir. 2020)(citations omitted). Any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion to compel arbitration and stay the

proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4; *Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004).

Under Title 9 U.S.C. § 1, however, the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has instructed courts to interpret the exemption narrowly, holding that § 1 applies only to "contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118–19 (2001). The question of whether § 1 applies is a question for the courts to decide, even if there is a delegation clause. *New Prime v. Oliveira*, 586 U.S. 105, 111 (2019).

To determine whether Plaintiff is a transportation worker, the Court must first define the relevant "class of workers" to which Plaintiff belongs before determining "whether that class of workers is 'engaged in foreign or interstate commerce.' " *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022)(internal citations omitted). A "transportation worker" is not required to work for a company in the transportation industry to be exempt under §1 of the FAA. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024). However, any exempt worker must at least play a "direct" and "necessary" role in the free flow of goods across borders. *Id.* at 256 (citations omitted).

In *Rittman*, the Ninth Circuit considered whether workers who provided delivery services for Amazon were "engaged in interstate commerce" when they made "last mile" deliveries of packaged products from Amazon warehouses to the packages' destinations. *Rittmann*, 971 F.3d at 907. Those workers were primarily engaged in intrastate deliveries. *Id*. The Ninth Circuit held that the delivery workers fell within the scope of Title 9 U.S.C. § 1's exemption. *Id*. at 909. The court reasoned that the subject packages "are goods that remain in the stream of interstate commerce until they are delivered." *Id*. at 915. It explained that, because the Amazon workers completed such "last mile" deliveries, they were "engaged in the movement of interstate commerce." *Id*.

More recently, the Ninth Circuit held that delivery drivers who delivered goods from a supply center in California to franchisees within California were exempt because the employees operated in a single, unbroken stream of interstate commerce. *Carmona v. Domino's Pizza, LLC ("Domino's Pizza")*, 73 F.4th 1135, 1138 (9th Cir. 2023). The defendant in that case, Domino's Pizza, bought pizza ingredients from suppliers outside of California, which were then delivered to Domino's Southern California supply center. At the supply center, employees "reapportion, weigh, and package, the relevant ingredients for delivery to local franchisees but do not otherwise alter them." *Id.* at 1136. The plaintiff drivers then delivered the ingredients in response to orders from Domino's Pizza franchisees. *Id.* The Ninth Circuit found the fact that food items were reapportioned, weighed, and packaged at the local supply center did not constitute an alteration of the products such as to break the interstate stream of commerce. *Id.* at 1138.

Applying these precedents, the Court finds that Plaintiff is a transportation worker because he plays a direct and necessary role in the flow of medical equipment across state borders. Defendant is a leading respiratory supplier in the country that delivers throughout the United States. As a Delivery Driver and Service Representative for Defendant, Plaintiff is responsible for delivering the end products to the ultimate user. Defendant essentially admits that most, if not all, of the equipment (other than oxygen tanks that are refilled in Coronado) crosses state lines.[2] The fact that Plaintiff does not himself carry the equipment across state lines does not change the analysis. *See Rittman*, 971 F.3d at 915 ("[w]e conclude that §1 exempts transportation workers who are engaged in the movement of goods in interstate commerce, even if they do not cross state lines.")

---

[2] Raymond Bustamante, Defendant's Operations Manager, states that oxygen concentrators and portable oxygen concentrators are sourced from a hub station in Arizona. [Doc. No. 11-1 at ¶ 4.] He also states that nebulizers and regulators are sourced from various suppliers and "Lincare does not know whether these parts <u>always</u> cross state lines before they arrive at Lincare's facility . . . " [Doc. No. 11-1, ¶5 (emphasis added)], essentially acknowledging that some or most of that equipment crosses state lines.

     Defendant argues that, while the medical equipment may cross state lines, it is altered at Defendant's facility and again by the Delivery Driver when it is delivered as to break the chain of commerce. However, the fact that equipment may be tested and inspected at the facility does not constitute alteration. *See Domino's Pizza*, 73 F.4th at 1138. Moreover, the fact that Plaintiff configures the equipment and shows the client how to use it also does not alter the product or break the interstate nature of the product. *See Reyes v. Hearst Communications, Inc.*, No. 21-cv-03362-PJH, 2021 WL 3771782, at *3 (N.D. Cal. Aug. 24, 2021)(plaintiff's delivery and assembly of the [product] does not detract from his role in moving [the product] through the channels of interstate commerce.)

     In addition, Defendant argues that it does not place an order for any medical equipment directly in response to a customer order. Rather, Defendant maintains inventory of all equipment and the equipment remains at rest at Defendant's facility until items need to be mobilized when a customer places an order or requests service. Defendant argues this process somehow interrupts the interstate travel of the products. However, "[t]he issue is not how the purchasing order is placed, but rather whether the [] drivers operate in a single, unbroken stream of interstate commerce that renders interstate commerce a central part of their job descriptions." *Rittman*, 971 F.3d at 630. Thus, the reality that equipment may sit at Defendant's facility until an order is placed does not negate from the interstate travel of the equipment. *See also Domino's Pizza*, 73 F.4th at 1138 (fact that Domino's franchisees did not order goods until after they arrived at warehouse did not break the interstate nature of the product.)

     Finally, Defendant argues that, unlike the *Domino's* delivery drivers, interstate transportation is not a central feature of the Plaintiff's job – rather installation and servicing are his primary job duties. However, the undisputed evidence is that Defendant does deliver the end product to the ultimate client. Moreover, Defendant has not presented evidence that any other employee position is responsible for delivering the products to the clients. Finally, Defendant requires Delivery Drivers/Service

Representatives to have a commercial license and maintain the delivery vehicles. Thus, transportation is an essential part of Plaintiff's job.

Accordingly, the Court finds that Plaintiff is a "transportation worker" within the meaning of Section 1 of the FAA and is, therefore, exempt from mandatory arbitration.

## CONCLUSION

For the reasons set forth above, the motion to compel arbitration, dismiss claims and stay proceedings is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 10, 2024

_____
Hon. Cathy Ann Bencivengo
United States District Judge